# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    Rachel Morris

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Middle District of Pennsylvania

Case number    20-01526

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

BANK OF AMERICA N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Bank of America | Bank of America, N.A. |
| Name | Name |
| PO BOX 31785 | P.O. BOX 660933 |
| Number   Street | Number   Street |
| Tampa    FL    33631-3785 | Dallas    TX    75266-0933 |
| City    State    ZIP Code | City    State    ZIP Code |
| Contact phone 1-800-669-6607 | Contact phone 1-800-669-6607 |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
             MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __9__ __1__ __7__ __4__

**7. How much is the claim?** $ _____ 21,896.13 **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Recorded Mortgage

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: 11969 WOODLAND DR FELTON, PA 17322

**Basis for perfection:** Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____
**Amount of the claim that is secured:** $ _____ 21,896.13
**Amount of the claim that is unsecured:** $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____ 0.00

**Annual Interest Rate** (when case was filed) 9.750 %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
| | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  07/01/2020
               MM / DD / YYYY

/s/ Jerome Blank, Esquire
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Jerome Blank, Esq., Id. No.49736 | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400 | One Penn Center Plaza | |
| | Number     Street | | |
| | Philadelphia, PA 19103 | | |
| | City | State | ZIP Code |
| Contact phone | 215-563-7000 Ext 31625 | Email | jerome.blank@phelanhallinan.com |

# Mortgage Proof of Claim Attachment

**(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 20-01526 |
| Debtor 1: | Rachel Morris |
| Debtor 2: | |
| Last 4 digits to identify: | 9 1 7 4 |
| Creditor: | BANK OF AMERICA, N.A. |
| Servicer: | BANK OF AMERICA N.A. |
| Fixed accrual/daily simple interest/other: | Fixed accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | 21820.56 |
| Interest due: | 75.57 |
| Fees, costs due: | 0.00 |
| Escrow deficiency for funds advanced: | 0.00 |
| Less total funds on hand: | − 0.00 |
| Total debt: | 21896.13 |

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | 0.00 |
| Prepetition fees due: | 0.00 |
| Escrow deficiency for funds advanced: | 0.00 |
| Projected escrow shortage: | 0.00 |
| Less funds on hand: | − 0.00 |
| Total prepetition arrearage: | 0.00 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | 222.02 |
| Monthly escrow: | 0.00 |
| Private mortgage insurance: | 0.00 |
| Total monthly payment: | 222.02 |

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |

**Official Form 410A**     Mortgage Proof of Claim Attachment     page 1 of 1

Case 1:20-bk-01526-HWV   Claim 2   Filed 07/02/20   Desc Main Document   Page 5

Case 1:20-bk-01526-HWV    Doc 20-2   Filed 07/07/20   Entered 07/07/20 17:57:49   Desc
Exhibit A    Proof of Claim    Page 5 of 24

Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

UNITED STATES BANKRUPTCY COURT
MIDDLE District of Pennsylvania (HARRISBURG)
Bankruptcy Petition #: 1:20-bk-01526-HWV

In Re:
RACHEL MORRIS **(Debtor)**

Jerome Blank, Esq., Id. No.49736 certifies that a true and correct copy of the attached Proof of Claim was served upon the following person(s):

Sara A. Austin
Austin Law Firm LLC
226 E. Market St.
York, PA 17403
**(Attorney for Debtor)**

Trustee
Charles J DeHart, III (Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036
**(Chapter 13 Trustee)**

Asst. U.S. Trustee
United States Trustee
228 Walnut Street, Suite 1190
Harrisburg, PA 17101
**(U.S. Trustee)**

Date    07/02/2020

/s/ Jerome Blank, Esquire
Jerome Blank, Esq., Id. No.49736
Georgia Bar No. 49736
Phelan Hallinan Diamond & Jones, PLLC
11675 Great Oaks Way
Suite 320
Alpharetta, GA 30022
Tel: 770-393-4300 Ext 31625
Fax: 770-393-4310
Email: jerome.blank@phelanhallinan.com

# NOTE
## Secondary Lien - Interest Only Feature

| | | |
|---|---|---|
| **10/10/2006** | **York** | **New York** |
| *[Date]* | *[City]* | *[State]* |

**11969 Woodland Drive**
**Felton, PA 17322**

*[Property Address]*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 23,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **GreenPoint Mortgage Funding, Inc.**
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the first day of each month beginning on December, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 190.94 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $222.90 . The Note Holder will notify me prior to the date of change in monthly payment.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Multistate Fixed Rate Note - Single Family - Secondary Lien
GreenPoint Mortgage Funding, Inc.
Page 1 of 3
Modified Form 3200 01/01
Modified by GreenPoint Mortgage Funding, Inc.
II33123MU 05/05

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000      % of my overdue payment of principal and interest, but not less than U.S. $ 20.00      or greater than U.S. $ N/A      . I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

---

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Rachel N. Morris_ _____ (Borrower)     _____ (Borrower)
Rachel N Morris

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

_____ (Borrower)     _____ (Borrower)

*[Sign Original Only]*



Multistate Fixed Rate Note - Single Family - Secondary Lien
GreenPoint Mortgage Funding, Inc.

Page 3 of 3

Modified Form 3200 01/01
Modified by GreenPoint Mortgage Funding, Inc.
H33123MU 05/05

Case 2:20-bk-04525-FMW Doc 22 Filed 07/16/20 Entered 07/16/20 07:56:49 Desc
Exhibit A - Proof of Claim Page 9 of 24

WITHOUT RECOURSE
PAY TO THE ORDER OF:
**Bank of America, N.A.**

GreenPoint Mortgage Funding, Inc.

Larry R. Kern
Assistant Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
Bank of America, N.A.

BY _____
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT







Prepared By:

**GreenPoint Mortgage Funding, Inc.**
**100 Wood Hollow Drive, Novato, CA**
**94945**
**(800) 462-2700**
Return To:

**GreenPoint Mortgage Funding, Inc.**
**981 Airway Court, Suite E**
**Santa Rosa, CA 95403-2049**

Parcel Number:
**41-EK-42B & ⬛ 41-EK-42.GO**
Premises: **11969 Woodland Drive,**
**Felton, PA  17322**

——————————— [Space Above This Line For Recording Date] ———————————

# MORTGAGE

MIN ⬛

THIS MORTGAGE is made this **10th** day of **October, 2006**, between the Mortgagor, **Rachel N Morris**

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ⬛ **GreenPoint Mortgage Funding, Inc.**

("Lender") is organized and existing under the laws of **the State of New York** and has an address of **100 Wood Hollow Drive, Novato, CA 94945**

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. **$ 23,500.00** which indebtedness is evidenced by Borrower's note dated **October 10, 2006**  and

---

**PENNSYLVANIA** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Form 3839
Amended 6/02
VMP-76N(PA) (0508)
Page 1 of 8
VMP Mortgage Solutions, Inc. (800)521-7291

Book **1848** Page **5568**

extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **November 1, 2036** ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of **York** ,
State of Pennsylvania:
**As more particularly described in exhibit "A" attached hereto and made a part hereof.**

which has the address of              **11969 Woodland Drive**              [Street]
                         **Felton**             [City], Pennsylvania      **17322**      [ZIP Code]
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and

TRACT NO. 1

ALL THAT CERTAIN      described tract of land, known as Lot No. 3 on a final subdivision plan by Gordon L. Brown & Associates, Inc., dated August 12, 1985, situate, lying and being in North Hopewell Township, York County, Pennsylvania, bounded, limited and described as follows:

BEGINNING at a point on the dedicated right-of-way line on the East side of Woodland Drive, Township Road 698, thence South fifty-one (51) degrees, twenty-four (24) minutes, twenty (20) seconds East, two hundred sixty-five and fifty-three one-hundredths (265.53) feet along lands now or formerly of Kathryn E. Ehrhart known as Lot No. 2 to a point; thence South forty-one (41) degrees, ten (10) minutes zero (00) seconds West, one hundred fifty (150.00) feet to a point at lands now or formerly of Bruce H. Grove; thence North fifty eight (58) degrees, fifty-one (51) minutes zero (00) seconds West, two hundred seventy (270.00) feet to a pin on the dedicated right-of-way line on the East side of Woodland Drive, township Road 698; thence along the right-of-way line North forty-one (41) degrees, ten (10) minutes, zero (00) seconds East, one hundred seventy and six one-hundredths (170.06) feet; thence North forty-three (43) degrees, thirty-three (33) minutes, forty (40) seconds East, fifteen (15.00) feet to the place of BEGINNING.

TRACT NO. 2

ALL THAT CERTAIN      piece, parcel or tract of ground, situate, lying and being in the Township of North Hopewell, York County, Pennsylvania, and known as Lot No. 8 on a Final Subdivision Plan by Gordon L. Brown & Assoc., Inc. dated February 27, 1995 and recorded June 9, 1995 in the York County, Pennsylvania Recorder of Deeds Office in Plan Book NN, page 591, more particularly bounded and described as follows to wit:

BEGINNING at a pin at other lands now or formerly of Jerry T. Blackwell, Jr.; thence along said lands North forty-one (41) degrees ten (10) minutes zero (00) seconds East, one hundred fifty (150.00) feet to a point at land known as Lot No. 7 on the above noted Final Subdivision Plan; thence along said Lot No. 7, South fifty-one (51) degrees twenty-four (24) minutes twenty (20) seconds East, one hundred seven and sixty-two hundredths (107.62) feet to a point at lands known as Lot No. 4 on the above noted Final Subdivision Plan; thence along said lands, South forty-one (41) degrees ten (10) minutes zero (00) seconds West one hundred thirty-six and forty-seven hundredths (136.47) feet to a point at lands now or formerly of Walter J. Tenney; thence along said lands North fifty-eight (58) degrees thirty-one (31) minutes twenty-five (25) seconds West, one hundred nine and seven hundredths (190.07) feet to a pin at other lands now or formerly of Jerry T. Blackwell, Jr. and the place of BEGINNING.

STEWART TITLE
GUARANTY COMPANY

assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals

Case 20-20-04-525-16-WV Doc 21-22 Filed 07/12/20 Entered 07/12/20 17:49 Desc
Exhibit A    Proof of Claim 18    Page 14 of 24

thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour before the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bond and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____     _____ (Seal)
                                     Rachel N Morris                -Borrower

                                     _____ (Seal)
                                                                    -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                                           -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                                           -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                                           -Borrower

                                             *(Sign Original Only)*

Case 20-04-01526-WVWDoc 21-22 Filed 07/07/20 Entered 07/07/20 07:57:49 Desc
Exhibit A    Proof of Claim    Page 18 of 24

**COMMONWEALTH OF PENNSYLVANIA,** *York*        **County ss:**

On this, the *10th* day of *October 2006* , before me, the undersigned officer, personally appeared **Rachel N Morris**

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Sharon E. Reimold, Notary Public
Springettsbury Twp., York County
My Commission Expires Dec. 1, 2009
Member, Pennsylvania Association of Notaries

*Sharon E Reimold*

*Notary Public*

Title of Officer

**Certificate of Residence**

I,      *S Reimold* , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this **10th**       day of **October, 2006**

*A Reimold*

Agent of Mortgagee



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*

Instrument Number - 2006082245
Recorded On 10/19/2006 At 2:37:42 PM
\* Instrument Type - MORTGAGE
Invoice Number - 656767
\* Grantor - MORRIS, RACHEL N
\* Grantee - MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
User - .JDB
\* Customer - CROSSROADS - JOE

Book - 1848   Starting Page - 5568
\* Total Pages - 8

\* Received By: COUNTER

\* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $19.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $4.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $50.00 |

PARCEL IDENTIFICATION NUMBER
  41000EK0042B000000
  41000EK0042G000000
Total Parcels: 2

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **1848**  Page: **5575**

_____ [Space Above This Line for Recording Data] _____

| This Document Prepared By: | When Recorded Mail To: |
|---|---|
| **JULIO ESTRADA** | **FIRST AMERICAN TITLE COMPANY** |
| **BANK OF AMERICA** | **1795 INTERNATIONAL WAY** |
| MC: ███████ | **IDAHO FALLS, ID 83402** |
| **4909 SAVARESE CIR.** | |
| **TAMPA, FL 33634** | |
| **(800) 444-4302** | |
| **Tax/Parcel #: 41000EK0042B000000;** | |
| **41000EK0042G000000** | |

# ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is **1901 E. Voorhees St., Suite C, Danville, IL 61834; and P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063**, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**
Mortgagor(s): **RACHEL N MORRIS**
Date of Mortgage: **OCTOBER 10, 2006**
Original Loan Amount: **$23,500.00**
Property Address: **11969 WOODLAND DRIVE, FELTON, PENNSYLVANIA 17322**

Recorded on **OCTOBER 19, 2006** in INSTRUMENT NO. **2006082245 BOOK 1848 PAGE 5568** of the official Records of **YORK COUNTY**, State of **PENNSYLVANIA**.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Page 1



IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

Date **JUN 1 9 2020**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS

By _[signature]_      **STEPHANIE BODKIN**
(Signature)      **VICE PRESIDENT**

I hereby certify that the correct address of the assignee is: **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063**

_[signature]_      Attest (with name): **STEPHANIE BODKIN**
(Signature)

[Space Below This Line for Acknowledgments]

STATE/COMMONWEALTH OF _TEXAS_
COUNTY OF _DALLAS_

On this, the _19_ day of _June_, 20_20_, before me **ANNA HOFRICHTER**, the undersigned officer, personally appeared **STEPHANIE BODKIN**, who acknowledged himself/herself to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**, a company, and that he/she as such **VICE PRESIDENT** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as **VICE PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

_[signature]_

ANNA HOFRICHTER, Notary Public
My commission expires: 10/19/2020

_[notary seal]_
ANNA HOFRICHTER
Notary Public, State of Texas
Comm. Expires 10-19-2020
Notary ID

Page 2

# EXHIBIT A

**BORROWER(S): RACHEL N MORRIS**

**LOAN NUMBER:** ████████

**LEGAL DESCRIPTION:**

## TRACT NO. 1

ALL THAT CERTAIN DESCRIBED TRACT OF LAND, KNOWN AS LOT NO. 3 ON A FINAL SUBDIVISION PLAN BY GORDON L. BROWN & ASSOCIATES, INC., DATED AUGUST 12, 1985, SITUATE, LYING AND BEING IN NORTH HOPEWELL TOWNSHIP, YORK COUNTY, PENNSYLVANIA, BOUNDED, LIMITED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE DEDICATED RIGHT-OF-WAY LINE ON THE EAST SIDE OF WOODLAND DRIVE, TOWNSHIP ROAD 698, THENCE SOUTH FIFTY-ONE (51) DEGREES, TWENTY-FOUR (24) MINUTES, TWENTY (20) SECONDS EAST, TWO HUNDRED SIXTY-FIVE AND FIFTY-THREE ONE-HUNDREDTHS (265.53) FEET ALONG LANDS NOW OR FORMERLY OF KATHRYN E. EHRHART KNOWN AS LOT NO. 2 TO A POINT; THENCE SOUTH FORTY-ONE (41) DEGREES, TEN (10) MINUTES ZERO (00) SECONDS WEST, ONE HUNDRED FIFTY (150.00) FEET TO A POINT AT LANDS NOW OR FORMERLY OF BRUCE H. GROVE; THENCE NORTH FIFTY EIGHT (58) DEGREES, FIFTY-ONE (51) MINUTES ZERO (00) SECONDS WEST, TWO HUNDRED SEVENTY (270.00) FEET TO A PIN ON THE DEDICATED RIGHT-OF-WAY LINE ON THE EAST SIDE OF WOODLAND DRIVE, TOWNSHIP ROAD 698; THENCE ALONG THE RIGHT-OF-WAY LINE NORTH FORTY-ONE (41) DEGREES, TEN (10) MINUTES, ZERO (00) SECONDS EAST, ONE HUNDRED SEVENTY AND SIX ONE-HUNDREDTHS (170.06) FEET; THENCE NORTH FORTY-THREE (43) DEGREES, THIRTY-THREE (33) MINUTES, FORTY (40) SECONDS EAST, FIFTEEN (15.00) FEET TO THE PLACE OF BEGINNING.

## TRACT NO. 2

ALL THAT CERTAIN PIECE, PARCEL OR TRACT OF GROUND, SITUATE, LYING AND BEING IN THE TOWNSHIP OF NORTH HOPEWELL, YORK COUNTY, PENNSYLVANIA, AND KNOWN AS LOT NO. 8 ON A FINAL SUBDIVISION PLAN BY GORDON L. BROWN & ASSOC., INC. DATED FEBRUARY 27, 1995 AND RECORDED JUNE 9, 1995 IN THE YORK COUNTY, PENNSYLVANIA RECORDER OF DEEDS OFFICE IN PLAN BOOK NN, PAGE 591, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS TO WIT:

BEGINNING AT A PIN AT OTHER LANDS NOW OR FORMERLY OF JERRY T. BLACKWELL, JR.; THENCE ALONG SAID LANDS NORTH FORTY-ONE (41) DEGREES TEN (10) MINUTES ZERO (00) SECONDS EAST, ONE HUNDRED FIFTY (150.00) FEET TO A POINT AT LAND KNOWN AS LOT NO. 7 ON THE ABOVE NOTED FINAL SUBDIVISION PLAN; THENCE ALONG SAID LOT NO. 7, SOUTH FIFTY-ONE (51) DEGREES TWENTY-FOUR (24) MINUTES TWENTY (20) SECONDS EAST, ONE HUNDRED SEVEN AND SIXTY-TWO HUNDREDTHS (107.62) FEET

TO A POINT AT LANDS KNOWN AS LOT NO. 4 ON THE ABOVE NOTED FINAL SUBDIVISION PLAN; THENCE ALONG SAID LANDS, SOUTH FORTY-ONE (41) DEGREES TEN (20) MINUTES ZERO (00) SECONDS WEST ONE HUNDRED THIRTY-SIX AND FORTY-SEVEN HUNDREDTHS (136.47) FEET TO A POINT AT LANDS NOW OR FORMERLY OF WALTER J. TENNEY; THENCE ALONG SAID LANDS NORTH FIFTY-EIGHT (58) DEGREES THIRTY-ONE (31) MINUTES TWENTY-FIVE (25) SECONDS WEST, ONE HUNDRED NINE AND SEVEN HUNDREDTHS (190.07) FEET TO A PIN AT OTHER LANDS NOW OR FORMERLY OF JERRY T. BLACKWELL, JR. AND THE PLACE OF BEGINNING.

ALSO KNOWN AS: 11969 WOODLAND DRIVE, FELTON, PENNSYLVANIA 17322